## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**ROGER WAYNE HAVENS**                                                            **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO.  3:19CV 870 KHJ-LGI**

**CENTRAL MISSISSIPPI**
**CORRECITONAL FACILTY, et al.**                              **DEFENDANTS**

## REPORT AND RECOMMENDATION
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

This matter is before the Court on the Motion for Summary Judgment filed by

Centurion Defendants Dr. William Brazier, Medical Site Administrator Sandra Lampkin,

and Nurses Christina Charczenko, Robert King, Nina Waltzer, and Adrea B. Zarich.

Centurion Defendants are physicians and nurses employed by Centurion of Mississippi,

LLC, which contracts with the Mississippi Department of Corrections ("MDOC") to

provide medical care to inmates.  Centurion Defendants contend that summary judgment

is appropriate because Plaintiff fails to establish an Eighth Amendment or Fourteenth

Amendment violation. After a thorough review of the voluminous medical and

administrative records, Plaintiff's sworn testimony, and the applicable law, the

undersigned finds as follows.

The facts are detailed in the memorandum briefs and pleadings filed by both

parties and will not be repeated in depth herein.  Seeking recovery under 42 U.S.C. §

1983, Plaintiff alleges numerous constitutional and other violations.  The crux of his

Complaint, however, concerns the alleged actions or inactions of the various named

defendants after he allegedly injured himself jumping from a moving sheriff's vehicle. Plaintiff alleges that his ability to get physical therapy as recommended by physicians at UMMC has been impeded since he underwent surgery in January 2018. Medical records reflect that upon his arrival at CMCF, Plaintiff was in a wheelchair and wearing a neck brace, right and left hand and arm splints, and a left leg boot brace. Upon examination, he was initially housed in the infirmary where he was monitored and treated with medication, with orders that his wounds be cleaned daily. Once a lower bunk assignment became available, he was discharged from the infirmary but continued to receive medical treatment throughout 2018 and 2019 for his injuries and other medical conditions. Plaintiff alleges, however, that his repeated requests for physical therapy were to no avail.

Specifically, Plaintiff alleges that Centurion Defendants were deliberately indifferent to his medical needs as follows: Defendant Lampkin lied about scheduling his physical therapy appointments; Defendant Waltzer did not contact Defendant Lampkin concerning his physical therapy, and refused to give him his medications for his back; Defendant King would not give him prescribed medications; Defendant Charczenko was verbally abusive towards him, threatened him, and cancelled his medications and bandage changes; and, Defendant Brazier stopped treating him and failed to procure his physical therapy appointments. In addition to these claims, Plaintiff also alleges that the co-pay charges he received for medical services were a constitutional violation. In his prayer for relief, Plaintiff seeks approximately one million dollars in damages, and requests that he be placed in housing suitable for persons with disabilities. He also requests that he not be retaliated against for filing this Complaint.

## STANDARD OF REVIEW

Summary judgment is only appropriate where there is no genuine issue as to any material fact and the Defendants are entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). All the undisputed facts, and any inferences that may be drawn from those facts, must be viewed in the light most favorable to the non-moving party. The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court makes the following findings.

## Discussion

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Crim. Just., Institutional Div.*, 91 F. App'x 963, 964 (5th Cir. 2004), (*citing Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). However, deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (*quoting Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). An official acts with deliberate indifference only when he or she knows of and disregards an excessive risk to a prisoner's health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (citations omitted). Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d

191, 193 (5th Cir. 1993); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). Negligent or even erroneous medical treatment or judgment does not provide the basis for a constitutional claim. *Graves v. Hampton*, 1 F.3d 315, 219 (5th Cir. 1993), *abrogated by Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994).

As noted *supra*, the thrust of Plaintiff's Complaint is that Defendants denied or delayed his physical therapy appointments in deliberate indifference to his medical needs. Plaintiff alleges that Centurion Defendants have not only ignored his complaints and lied about scheduling treatment, but they have also omitted and falsified medical records, all in deliberate indifference to his serious medical needs. Centurion Defendants do not contest that deliberate indifference to a serious medical need may be manifested by prison doctors in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed; rather, they maintain that the evidence of record does not present a material fact issue for deliberate indifference. The undersigned agrees and addresses the claims against each Centurion Defendant in turn.

### Defendant Lampkin (Medical Site Administrator)

As to Plaintiff's claim that Defendant Lampkin made misrepresentations about scheduling physical therapy appointments in response to his administrative grievances, MDOC has implemented an Administrative Remedy Program statewide in all prisons under the authority of Miss. Code Ann. § 47-5-801. *See Jackson v. Hall*, 763 F. App'x 376, 377 (5th Cir. 2019). The two-step process requires that an inmate submit a written grievance to the Legal Claims Adjudicator at the prison within 30 days of the incident. If the adjudicator accepts the ARP, it is forwarded to the appropriate official, and that

official issues a First Step Response.  If unsatisfied, the inmate may continue to the

Second Step by using Form ARP-2 and sending it to the Legal Claims Administrator,

utilizing the manila envelope furnished with the Step One response. A final decision will

be made by the Superintendent, Warden, or Community Corrections Director.

The ARP process is complete once the inmate receives the prison official's Second

Step Response. *Gross v. Hall*, No. 3:17-CV-494-CWR-FKB, 2019 WL 4397347, at *2

(S.D. Miss. Aug. 2, 2019), *report and recommendation adopted,* No. 3:17-CV-494-

CWR-FKB, 2019 WL 4396146 (S.D. Miss. Sept. 13, 2019).

Relevant here, Plaintiff alleges that Defendant Lampkin has repeatedly lied about

scheduling his physical therapy appointments; in support, he points to her Second Step

Response form in which she indicated that his physical therapy appointments were being

scheduled in response to his ARP grievance.  The Second Step Response dated February

3, 2020 states as follows: "An appointment has been made with a physical therapy

provider.  You will be going off grounds for this appointment in the near future."

Though not expressly argued as a separate basis for summary judgment, Defendants

assert in a footnote in their memorandum brief that this claim is unexhausted because

Lampkin's Second Step Response was filed *after* Plaintiff filed the instant action.  In

response, Plaintiff maintains that he exhausted all claims, including those related to

Defendant Lampkin.  It is not enough, however, to merely initiate the grievance process

or to put prison officials on notice of a complaint; the grievance process must be carried

through to its conclusion before seeking judicial review.  *Wright v. Hollingsworth*, 260

F.3d 357, 358 (5th Cir. 2001).  While Centurion Defendants do not re-urge the argument

in rebuttal, the Second Step Response was filed after the instant action was filed.  That said, the record reflects that more than seven months lapsed between the date that the ARP was filed and Lampkin's Second Step Response.

Even when considered on the merits, however, the evidence of record does not present a material fact issue to support a deliberate indifference claim against Defendant Lampkin.  Though Plaintiff maintains that he made multiple requests to Defendant Lampkin, the evidence does not support the assertion that Defendant Lampkin lied about scheduling physical therapy appointments or ignored his complaints.  *See Carrothers v. Kelly*, 312 F. App'x 600, 602 (5th Cir. 2009).  The record reflects that Plaintiff was informed that, in addition to filing a sick-call request for physical therapy, off-site referrals had to be approved by MDOC in November 2019.  Thus, neither Defendant Lampkin, nor Defendant Brazier for that matter, had the ultimate authority for scheduling off-site physical therapy appointments.  Rather, this decision falls within the discretion of MDOC's Specialty Coordinator.  *See Holloway v. Brazier*, No. 3:17CV806 LRA (May 5, 2020).

As noted above, moreover, Defendant Lampkin's Second Step response indicates that the physical therapy appointments were approved approximately three months after the instant action was filed.  That the approval did not come sooner does not necessitate a finding of deliberate indifference.  To the contrary, "[w]hile the intentional failure to schedule an appointment with a medical specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not." *Thomas v. Carter*, 593 F. App'x 338, 344 (5th Cir. 2014); *Stewart v. Murphy*, 174

F.3d 530, 534 (5th Cir. 1999); *Green v. McKaskle*, 788 F.2d 1116, 1127 (5th Cir. 1986). The evidence simply does not support Plaintiff's contention that Defendant Lampkin engaged in the "malicious denial of medical treatment," or that she, or any other Defendant, falsified records or lied about scheduling his physical therapy appointments.

### Defendant Brazier (Physician)

The same holds true for Plaintiff's allegations against Dr. Brazier.  Plaintiff alleges that Dr. Brazier was deliberately indifferent to his medical needs because he discontinued treating him and failed to procure his physical therapy appointments.  However, this claim is belied by the record which documents regular medical treatment by Dr. Brazier from February 2018 through November 2019, including pain medication and anti-inflammatories to treat the injuries he sustained, as well as other conditions.  "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).  Further, Defendants correctly note that any differences in medical judgment between an offsite doctor's recommendation and the Centurion Defendants' medical judgment does not amount to a constitutional violation.  *See Stewart*, 174 F.3d 530 (prison physician was not deliberately indifferent to inmate's serious medical needs by failing to follow non-prison surgeon's advice to transfer inmate to another facility for physical therapy).  It is not entirely clear from the record, however, that Defendant Brazier disagreed with the physical therapy recommendations and no declaration has been submitted to this effect.  Notwithstanding, the evidence establishes that Dr. Brazier did not have ultimate authority to order that Plaintiff be taken to physical therapy.

As to Plaintiff's complaint that Dr. Brazier did not continue to treat him, it is well-settled that the decision to provide additional treatment is a matter of medical judgment that does not in itself give rise to a claim of deliberate indifference. *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020). Moreover, the record reflects that Dr. Brazier made multiple decisions concerning Plaintiff's medical care, including renewing his wheelchair orders, even after it was noted that Plaintiff had apparently "walked out of the hospital, and could bear weight on his extremities" when he was discharged. Though the approval order was issued temporarily until Plaintiff could return to UMMC for a follow-up, it is clear that Dr. Brazier credited Plaintiff's subjective reports that he was still in need of a wheelchair. Given the circumstances presented, Plaintiff would likely be unsuccessful in asserting even a negligence claim against Dr. Brazier.

## Remaining Defendants (Medical Staff)

Plaintiff's remaining allegations concern the actions or inactions of the nursing staff and physician assistants employed by Centurion. As to Defendants Waltzer, King, Zarich, and Charczenko, Plaintiff alleges that they either ignored his complaints, disregarded his physical therapy requests, and/or denied or discontinued his medications and treatment.

Here again, none of these Defendants had the ultimate authority to order that Plaintiff be taken to physical therapy, and nothing of records substantiates Plaintiff's assertions that they deliberately interfered with his requests or medical treatment. "A ***showing*** of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (emphasis added) (internal quotation marks and citations omitted). Neither acts of negligence or unsuccessful medical treatment "constitute deliberate indifference on the part of a prison official to a prisoner's substantial risk of serious harm, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.*

Drawing all reasonable inferences in Plaintiff's favor in this case, the records show extensive medical treatment during the relevant time period, undermining his allegations that Centurion Defendants were deliberately indifferent to his medical needs. Medical records, totaling over 250 pages, show recurring medical visits for physical ailments, chronic conditions, mental health, and dental care. Orders for multiple medications, including ibuprofen, acetaminophen, baclofen, ketorolac tromethamine, antacid, muscle rub, lotion, and anti-inflammatories are indicated. Moreover, nothing of record indicates the discontinuance of medications or treatment without cause. For example, with regard to Plaintiff's claim that his lotion was erroneously discontinued causing him to have itchy and flaky skin, no order of discontinuance is reflected in the record. Even so, as Defendants point out, flaky, itchy skin is not the sort of "serious risk of harm" contemplated by the deliberate indifference standard. Similarly, with regard to his claim that his bandage changes were erroneously discontinued, the medical records reflect that this decision was made by a nurse practitioner, not named in the instant action, for the purpose of leaving the wounds "open to air." Though Plaintiff may disagree with this decision, a "prisoner's disagreement with his medical treatment" does

not constitute deliberate indifference. *Ward v. Fisher*, 616 F. App'x 680, 683 (5th Cir. 2015).

Lastly, with respect to Plaintiff's claim that Defendant Charczenko was verbally abusive towards him, verbal harassment does not rise to the level of a constitutional violation. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). "Mere words are not sufficient to support a Section 1983 claim." *Orange v. Ellis*, 348 F. App'x 69, 72 (5th Cir. 2009).

In sum, while Plaintiff may disagree with some aspects of his treatment, establishing deliberate indifference requires a plaintiff to meet an extremely high standard of proof. Plaintiff has not met this burden here. To the extent that Plaintiff did not always receive medical care recommended by medical providers, nothing in the record indicates that this was anything other than mere negligence, which is insufficient to demonstrate deliberate indifference. *Moreno v. Kwarting*, 763 F. App'x 368, 369 (5th Cir. 2019).

## Co-pay Claim

As a final matter, Plaintiff's co-pay claim fails to state a viable constitutional claim. Notably, he does not allege that he was denied or delayed medical treatment because of any inability to pay for the medical treatment. Rather, Plaintiff alleges that he was erroneously charged co-pay for his chronic care medical appointments. However, the uncontroverted summary judgment evidence reflects that, of those visits for which Plaintiff was charged a co-pay, none were chronic care appointments. Instead, in

accordance with MDOC policy, Plaintiff was either charged for self-initiated non-emergency visits or for failing to appear.

To be sure, the "deliberate indifference standard . . . does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir. 2014)(quotation marks omitted) (citing *Farrakhan v. Johnson*, No. 1:08CV438 TSE-JFA, 2009 WL 1360864, at *5 (E.D. Va. May 13, 2009) (unpublished) ("Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim."); *see also Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001)–16 ("Charging inmates for medical care, furthermore, is not *per se* unconstitutional. . . . Deducting payments from a prison trust account does not of itself violate the Eighth Amendment's prohibition against cruel and unusual punishment.")  Any argument to the contrary is without merit, and Centurion Defendants are entitled to summary judgment on this claim.

For the reasons stated herein, the undersigned recommends that the instant motion for summary judgment be granted.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party may serve and file written objections to the Report and Recommendation within 14 days after being served with a copy of this Report and Recommendation.  The objections must be filed with the Clerk of Court, and the

objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation, within 14 days after being served with a copy shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on August 16, 2021.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE