IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ROGER WAYNE HAVENS**                                                    **PLAINTIFF**

**V.**                              **CIVIL ACTION NO.   3:19-CV-870 KHJ-LGI**

**CENTRAL MISSISSIPPI**
**CORRECTIONAL FACILTY, et al.**                                    **DEFENDANTS**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the *Second Motion for Summary Judgment* filed by Defendant Captain Alvin Washington. The docket in this cause reflects that Plaintiff submitted a response to the summary judgment motion filed by Centurion Defendants concerning the allegations in his Complaint, but he has failed to file a written response to the instant motion despite the undersigned's order granting him an extension of time to do so following his release from custody on November 1, 2021. The undersigned has nevertheless considered Plaintiff's filings to date in their entirety to the extent relevant and responsive to the instant motion. After a thorough review of the voluminous medical and administrative records, Plaintiff's sworn testimony, and the applicable law, the Court finds as follows:

Seeking recovery under 42 U.S.C. § 1983, Plaintiff filed the instant action alleging numerous constitutional and other violations against multiple Defendants. As all other claims have been previously dismissed, and any all requests for declaratory and

injunctive relief were rendered moot by his release from custody, Plaintiff's excessive force claim against Defendant Washington is all that remains.[1]

The genesis of Plaintiff's complaints center around the alleged actions or inactions of the various named defendants after he injured himself jumping from a moving sheriff's vehicle. Specifically, as to Defendant Washington, Plaintiff alleges that he verbally abused, choked, and dumped him from his wheelchair when he attempted to seek medical care for his injuries on June 21, 2018. He testified as follows at the omnibus hearing:

> One day I got called for an appointment to go to the clinic. The guy that pushed me up there, he pushed me in the clinic and I let the nurse know that I was there for my appointment. And she said, "Okay." And she said, "Go right over here and talk to this nurse." When you check in, you know, you get your blood pressure and your temperature taken. And I went over there and I was talking to her and she asked me what I was there for and I said, "Well, I am needing to still get these staples out of my head, the ones that y'all hadn't been able to remove that y'all said y'all were going to send me off grounds to get out. And she got mad and she started hollering, "There's no staples in your head. Show me a staple in your head."
>
> And I said, sure. So I pulled my head back, staples in my head still. And that's four or five months after they were installed; which you know, they're not supposed to be there that long. And they get mad and say, "Well, just go back into the holding tank."
>
> So I am going to the holding tank, and I am sitting there and waiting for them to call me back in for my doctor's appointment. And all of a sudden, I see Captain Washington come in and go into the clinic. And all of a sudden, he comes back out and he comes to me and he tells me, "Sir, get out of the wheelchair. Get out of the wheelchair." And I said, "Sir, I can't walk. What are you talking about?" And he said, "You got up and walked in there and walked all the way to the clinic. Get out of the wheelchair." And then he grabbed me by my neck on both sides, choking me. And then

---

[1] Plaintiff's claims concerning Washington's alleging verbal harassment did not rise to the level of a constitutional violation and were dismissed by this Court. *Orange v. Ellis*, 348 F. App'x 69, 72 (5th Cir. 2009) ("Mere words are not sufficient to support a Section 1983 claim.").

> he takes one hand and puts the other one behind my neck right here where I've had surgery at, and he takes the handle of the wheelchair on the back, and goes dumping me out onto the floor. He dumped me out onto the holding tank floor in the clinic, and I am just laying there.
>
> And after so long a time, they send a nurse and the clinic worker out, and they load me up and carried me to the zone and dumped me on my bed, and that's where I stayed for two weeks until my mom was able to get the grievance filed, and finally get me a wheelchair back. And like I said, I missed meals; I urinated on myself; I used the bathroom on myself quite a few times; couldn't get a shower; couldn't get food; nothing. That is very bad. That was a direct assault on me –

Though not reiterated in his omnibus testimony or Complaint, Plaintiff asserted in his ARP that his neck and shoulders were hurt in the assault, which aggravated his pre-existing injuries. He seeks more than one million dollars in damages for pain and suffering, and mental anguish as relief. He also requests that he be placed in housing suitable for persons with disabilities, and that he not be retaliated against for filing this Complaint.

## Standard of Review

Defendant Washington moves for summary judgment on qualified immunity grounds. Summary judgment is only appropriate where there is no genuine issue as to any material fact and the Defendants are entitled to a judgment as a matter of law. Fed. R. Civ. P. 56 (c). All of the undisputed facts, and any inferences that may be drawn from those facts, must be viewed in the light most favorable to the non-moving party. However, "[q]ualified immunity changes the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). When a good faith

assertion of qualified immunity has been made, the Plaintiff must show that the defense is unavailable. *Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 1058, 208 L. Ed. 2d 525 (2021). Plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" are all insufficient to overcome immunity. *See Reyes v. Hornbeck Offshore Servs., L.L.C.*, 383 F. App'x 442, 443–44 (5th Cir. 2010) (quoting *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002)).

## Discussion

As recently reiterated by the Fifth Circuit, the goal of qualified immunity "is to harmonize the need to hold public officials accountable when they exercise power irresponsibly with the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The defense protects all but the plainly incompetent or those who knowingly violate the law." *Rombach v. Culpepper*, No. 20-30554, 2021 WL 2944809, at *3 (5th Cir. July 13, 2021) (internal quotation marks and citations omitted). A two-part test determines whether a defendant is entitled to qualified immunity: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). If the Court finds that there

was no constitutional violation, the Court need not address the second part of the test. *Marks v. Hudson*, 933 F.3d 481, 483 (5th Cir. 2019); *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013). Plaintiff, however, has the burden of rebutting a qualified immunity defense, and if he fails to satisfy either prong, the defendant prevails. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (granting the lower courts permission to evaluate either prong of the qualified immunity analysis first).

Defendant Washington does not contest that the use of excessive force is a violation of clearly established federal law. Rather, he maintains that the evidence is insufficient to overcome a qualified immunity defense because medical records show "that the event never happened or alternatively, that the Plaintiff incurred no injury." Having reviewed the uncontested summary judgment evidence and drawn all reasonable inferences in Plaintiff's favor, the undersigned agrees.

To establish an excessive force claim under the Eighth Amendment, a plaintiff must show that force was not "applied in a good-faith effort to maintain or restore discipline," but rather "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Courts consider the following factors "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Baldwin v. Stalder*, 137 F.3d 836, 838–39 (5th Cir. 1998) (citing *Hudson* factors); *see also Wilkins v. Gaddy*, 559 U.S. 34, 34, 130

S.Ct. 1175, 175 L.Ed.2d 995 (2010).  Not "every malevolent touch by a prison guard" is an Eighth Amendment violation, however.  *Hudson*, 503 U.S. at 9.  "[A]n inmate who complains of a push or a shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilson, 599 U.S* at 38 (citation and internal quotation marks omitted).  To support an excessive force claim, a prisoner must allege that he suffered a physical injury that was more than *de minimis* or that the force used was repugnant to the conscience of mankind.  *Gomez v. Chandler*, 163 F.3d 921, 923–24 (5th Cir. 1999).  Moreover, 42 U.S.C. § 1997(e), enacted as part of the Prison Litigation Reform Act (PLRA), provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." *See also Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997) (holding that a sore and bruised ear lasting for three days was *de minimis* and did not meet the physical injury requirement found in the PLRA).

Applying these principles to the case at hand, there is no independent evidence supporting Plaintiff's allegations of an Eighth Amendment violation.  For instance, Plaintiff claims that the incident with Defendant Washington occurred on June 21, 2018, after he went to the CMCF medical clinic to get a staple removed from his head. However, there is no record of Plaintiff seeking or receiving medical treatment on that date. Rather, records show that Plaintiff sought medical treatment the next day and requested a wheelchair at that time, undermining his claim that he was in a wheelchair

when Defendant Washington allegedly assaulted him the day before.[2] The clinic notation from June 22, 2018, reflects as follows:

> 06/22/2018 – Phone Note: requesting wheelchair
>
> Officer Carter reported that inmate stated that he was paralyzed and needed a wheelchair. After a review of chair [sic] no order for a wheelchair was found and [there is] know [sic] indication in problems that this inmate is unable to walk.

While records show that a wheelchair order was ultimately issued for Plaintiff, it was not issued until July 10, 2018, some two weeks after he claims Defendant Washington assaulted him. The issuing physician notes that although Plaintiff "walked out of the hospital, and could bear weight on his extremities" upon being discharged:

> Given patient's self-reporting, will give patient wheelchair until his f/u appt at [University Mississippi Medical Center "UMMC"] and it is confirmed that he is able to ambulate w/o assistance.
>
> Allow patient to have wheelchair for ambulation until his f/u appt at UMMC. Once he is cleared by UMMC to ambulate w/o assistance, wheelchair will be discontinued.

This order, again, post-dates Defendant Washington's alleged assault.

In addition to there being no evidence that Plaintiff visited the medical clinic on June 21, 2018, much less in a wheelchair, there are no medical records substantiating Plaintiff's claim that he suffered even *de minimis* injuries at the hands of Defendant Washington. Medical records, totaling over 250 pages, show Plaintiff had recurring

---

[2] The undersigned notes that Plaintiff initially wrote June 22, 2018, as the date the assault occurred in his Complaint before scratching through it and writing June 21, 2018. To the extent Plaintiff contends that the assault indeed occurred on June 22, 2018, it would not impact the Court's analysis. As noted above, medical records from June 22, 2018, reflect that Plaintiff requested a wheelchair on that date and it was not granted until July 10, 2018. Plaintiff's only other CMCF clinic visit for the month of June was for lab work on June 6, 2018.

medical visits for physical ailments, chronic conditions, mental health, and dental care while in custody at CMCF. They establish that Plaintiff received treatment for multiple injuries after he jumped from the moving sheriff's vehicle. They also confirm that Plaintiff reported and was treated for injuries sustained in assaults by other inmates, including one in which he was reportedly dumped from his wheelchair in February 2019. However, they do not substantiate Plaintiff's claim that he suffered from the use of force or injuries at the hands of Defendant Washington. Unlike his other assaults, Plaintiff did not report Washington's alleged assault to medical personnel on June 22, 2018, after the alleged assault, or on any date thereafter. Medical records showing no evidence of injuries consistent with an inmate's allegations are considered implausible. *Wilburn v. Shane*, 193 F.3d 517, 517 (5th Cir. 1999) (unpublished) (citing *Wesson v. Oglesby*, 910 F.2d 278, 281–82 (5th Cir. 1990)). *See Gobert v. Caldwell,* 463 F.3d 339, 347 n. 24 (5th Cir. 2006) ("'Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's [civil rights] allegations.'").

     The undersigned notes that Plaintiff asserted at the omnibus hearing that there were witnesses to the assault, but he was unwilling to identify them for fear they would be retaliated against. However, he cannot rest on the allegations of his Complaint and testimony alone, especially when his account is belied by the record. *Crenshaw v. Hamilton*, 25 F. Supp. 3d 368, 369 (W.D.N.Y. 2014) ("Not only does plaintiff rely solely on his own testimony, but that testimony is contradicted by the record."). Despite receiving additional time to respond to the instant motion upon his release from custody, as noted *supra*, Plaintiff has failed to do so. In fact, Plaintiff has not communicated with

the Court since filing a Notice of Change of Address nearly seven months ago. His failure to respond to the instant motion or otherwise communicate with the court since his release from custody suggests that he has lost interest in pursuing his remaining claim. In the absence of any evidence supporting Plaintiff's allegations that he was injured by Defendant Washington, or that an assault even occurred, Plaintiff cannot overcome his qualified immunity defense.

Given the evidence of record, the undersigned submits that plaintiff has not shown the existence of a fact issue that would give rise to a claim that Defendant Washington violated the Eighth Amendment's prohibition against the use of excessive force. For the reasons discussed herein, the undersigned recommends that *Defendant's Second Motion for Summary Judgment* be granted.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party may serve and file written objections to the Report and Recommendation within 14 days after being served with a copy of this Report and Recommendation. The objections must be filed with the Clerk of Court, and the objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation, within 14 days after being served with a copy shall bar that party from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

    Respectfully submitted on June 10, 2022.

                                       s/ LaKeysha Greer Isaac
                                       UNITED STATES MAGISTRATE JUDGE